UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JERRY B. COTNER, M.D., ET AL., )
 )
    Plaintiffs, )
 ) CIVIL ACTION NO.
VS. )
 ) 3:07-CV-0487-G
THE HARTFORD LIFE AND ANNUITY )
INSURANCE COMPANY, ET AL., ) **ECF**
 )
    Defendants. )

**MEMORANDUM OPINION AND ORDER**

Before the court are the motions of the plaintiffs Jerry B. Cotner, M.D., Jerry B. Cotner, M.D., P.A., and Jerry B. Cotner, M.D., P.A. Defined Benefits Plan (collectively, "plaintiffs") (1) to remand this case to the state court from which it was previously removed and (2) for cost and attorney's fees. For the reasons set forth below, the motions are granted.

I. BACKGROUND

This case arises from the solicitation, promotion, marketing, and sales by the defendant Hartford Life and Annuity Insurance Company and its agents (collectively, "Hartford") of a packaged retirement investment product designed to provide

significant tax benefits to its participants. The plaintiffs allege that this product consisted of a defined pension benefit plan funded by Hartford life insurance policies ("Retirement Product") that was ostensibly in compliance with Section 412(i) of the Internal Revenue Code. First Amended Complaint ¶ 16 ("Complaint"). The plaintiffs further allege that the Retirement Product was specifically marketed and promoted to medical professionals because of their high-net worth. *Id.*

In early 2003, Hartford's agents began a series of meetings with the plaintiffs to discuss their purchase of the Retirement Product. *Id.* ¶ 17. The plaintiffs allege that Hartford represented that the Retirement Product would provide various retirement benefits to Jerry B. Cotner, M.D. and to employees and beneficiaries of Jerry B. Cotner, M.D., P.A., as well as significant federal income tax deductions for Jerry B. Cotner, M.D., P.A.. *Id.* ¶ 18. The plaintiffs maintain that they relied on these representations when they purchased the Retirement Product from Hartford in April 2003. *Id.* ¶ 19. The plaintiffs paid approximately $700,000 in insurance premiums to Hartford, and also claimed approximately $700,000 in federal income tax deductions related to those premiums. *Id.* ¶ 20.

In February 2004, the Internal Revenue Service ("IRS") issued Revenue Ruling 2004-20 which -- the plaintiffs claim -- prohibited the issuance of life insurance policies that greatly exceeded the permissible death benefits in defined benefit plans because that indicated a plan was an abusive tax shelter. *Id.* ¶ 23. The IRS also ruled

that a defined benefit plan holding such policies could not qualify as a Section 412(i) plan. *Id.* The plaintiffs allege that Hartford recommended a "wait and see approach," as opposed to immediate action, because Hartford felt the Revenue Ruling might not affect the plaintiffs. *Id.* ¶ 24. The plaintiffs aver that in reliance on that representation, they paid more than $300,000 in additional premiums. *Id.* In early 2006, the plaintiffs received notice that the IRS would conduct an audit of the Cotner Defined Benefit Plan ("Cotner DBP"). *Id.* ¶ 25.

On February 12, 2007, the plaintiffs filed this suit against Hartford in the 134th Judicial District Court of Dallas County, Texas. *See* Plantiffs' Original Petition and Request for Disclosure ("Petition"), *attached to* Hartford Life and Annuity Insurance Company's Notice of Removal ("Notice of Removal") *as* Exhibit A. The plaintiffs alleged the following state law claims against Hartford: (1) violations of TEX. BUS. & COM. CODE ANN. §§ 17.46 & 17.50 ("Texas Deceptive Trade Practices Act");[1] (2) civil conspiracy to commit violations of the Texas Deceptive Trade Practices Act; (3) aiding and abetting violations of the Texas Deceptive Trade Practices Act; (4) violations of Tex. Ins. Code Ann. §§ 541.003, 541.051, 541.052 and 541.061 ("Chapter 541"); (5) civil conspiracy to commit violations of Chapter 541; (6) aiding and/or abetting violations of Chapter 541; (7) common law fraud;

---

[1] Specifically, the plaintiffs claim that Hartford violated § 17.46(2), (3), (5), (12), (24) and § 17.50(a)(1), (3), and (4) of the Texas Deceptive Trade Practices Act.

(8) civil conspiracy to commit fraud; (9) negligent misrepresentation; and (10) rescission. *Id.* ¶¶ 27-89.

On March 16, 2007, Hartford removed the case to this court, claiming that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, completely preempts the plaintiffs' claims, thus invoking this court's federal question jurisdiction. Notice of Removal ¶¶ 4-5; Hartford Life and Annuity Insurance Company's Memorandum in Opposition to Plaintiffs' Motion to Remand ("Response") at 1. Upon removal, the plaintiffs promptly filed the instant motion. *See* Plaintiffs' Motion to Remand to State Court ("Motion"). The plaintiffs contend that removal was improper because this suit does not involve federal claims and no other basis for this court's jurisdiction exists. *Id.*

## II. ANALYSIS

### A. *Legal Standard for Removal Jurisdiction*

Title 28 U.S.C. § 1441(a) permits removal of "any civil action brought in a State Court of which the district courts of the United States have original jurisdiction." Under this statute, "[a] defendant may remove a state court action to federal court only if the action could have originally been filed in the federal court." *Aaron v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania*, 876 F.2d 1157, 1160 (5th Cir. 1989), *cert. denied*, 493 U.S. 1074 (1990) (citations omitted). Removal jurisdiction must be strictly construed, however, because it "implicates

important federalism concerns." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997); see also *Willy v. Coastal Corporation*, 855 F.2d 1160, 1164 (5th Cir. 1988). Furthermore, "any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court." *Cross v. Bankers Multiple Line Insurance Company*, 810 F.Supp. 748, 750 (N.D. Tex. 1992); see also *Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100, 108-09 (1941); *Healy v. Ratta*, 292 U.S. 263, 270 (1934). The burden of establishing federal jurisdiction is on the party seeking removal. *Frank*, 128 F.3d at 921-22; *Willy*, 855 F.2d at 1164.

Typically, whether an action should be remanded to state court must be resolved by reference to the plaintiffs' pleading at the time of removal. *State of Texas v. Alliance Employee Leasing Corporation*, 797 F. Supp. 542, 544 (N.D. Tex. 1992). If the court can make this determination by reference to the plaintiffs' complaint alone, the court need not go further. However, should a district court need to go beyond the pleadings to assess the propriety of removal, it may do so. *Id.*

There are two principal bases upon which a district court may exercise removal jurisdiction: (1) the existence of a federal question and (2) complete diversity of citizenship among the parties. *See* 28 U.S.C. §§ 1331, 1332. The court can properly exercise jurisdiction on the basis of diversity of citizenship if the parties are of completely diverse citizenship and the case involves an amount in controversy of at least $75,000. *See* 28 U.S.C. § 1332(a). District courts have federal question

jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331; *Frank*, 128 F.3d at 922. Since the defendants allege only federal question jurisdiction, the court will limit its examination to whether this case involves a federal question.

B. *Federal Question Jurisdiction*

In determining whether a claim arises under federal law, the well-pleaded complaint rule allows a plaintiff to be the "master to decide what law he will rely upon" in pursuing his claims. *The Fair v. Kohler Die & Specialty Company*, 228 U.S. 22, 25 (1913); see also *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6-7 (2003); *Aaron*, 876 F.2d at 1160-61. Where potential remedies exist under both state and federal law, a plaintiff may choose to proceed only under state law and avoid federal court jurisdiction. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Carpenter v. Wichita Falls Independent School District*, 44 F.3d 362, 366 (5th Cir. 1995). "There is an exception to the well-pleaded complaint rule, though, if Congress 'so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003) (en banc) (quoting *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 63-64 (1987)), *cert. denied*, 540 U.S. 1104 (2004). Once the court "has proper removal jurisdiction over a federal claim, it may exercise supplemental jurisdiction over state law claims, . . . even if it dismisses or otherwise

disposes of the federal claim or claims." *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999) (citing 28 U.S.C. § 1367). Because the plaintiffs' suit asserts claims arising under state law, this court does not have jurisdiction unless federal law completely preempts at least one of the state law claims.

1. *ERISA Preemption*

There are two types of preemption under ERISA. First, "ERISA may occupy a particular field, resulting in complete preemption under § 502(a), 29 U.S.C. § 1302(a)." *Giles*, 172 F.3d at 336 (citing *Metropolitan Life*, 481 U.S. at 66). This is called complete preemption and it is an "exception to the well-pleaded complaint rule." *Id.* Complete preemption "'recharacterizes' preempted state law claims as 'arising under' federal law for the purposes of . . . making removal available to the defendant." *McClelland v. Gronwaldt*, 155 F.3d 507, 516 (5th Cir. 1998); see also *Johnson v. Baylor University*, 214 F.3d 630, 632 (5th Cir.), *cert. denied*, 531 U.S. 1012 (2000). Therefore, claims that are within the scope of ERISA § 502(a) are completely preempted and provide "grounds for a district court's exercise of jurisdiction upon removal." *Giles*, 172 F.3d at 337; *Anderson v. Electronic Data Systems Corporation*, 11 F.3d 1311, 1315 (5th Cir.), *cert. denied*, 513 U.S. 808 (1994). In contrast, the second type of ERISA preemption is conflict, or ordinary, preemption. This type of preemption involves claims that fall outside ERISA § 502 but are still preempted by ERISA provision § 514. Conflict preemption is not an exception to the

"well-pleaded complaint rule." Therefore, claims that are preempted by ERISA provision § 514 "are not removable under the complete-preemption principles established in *Metropolitan Life*." *Giles*, 172 F.3d at 337. Conflict preemption does not transmogrify a state cause of action into a federal one; instead it "serves as a defense to a state action." *Id.* Consequently, to determine whether removal was proper in this case, the court must examine whether the claims are completely preempted by ERISA.

2. *ERISA Complete Preemption*

A state law cause of action is completely preempted when two elements are present: "1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and 2) the claims directly affect the relationship between the traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Hollis v. Provident Life and Accident Insurance Company*, 259 F.3d 410, 414 (5th Cir. 2001) (citing *Weaver v. Employers Underwriters, Inc.*, 13 F.3d 172, 176 (5th Cir. 1994)), *cert. denied*, 535 U.S. 986 (2002). In the instant case, the second part of the test is met because the claim arises between the employer, the plan, and its fiduciaries. This means that only issue left for the court is whether the state law claims are of exclusive federal concern. Any state law "cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy" addresses an area of exclusive federal concern and is subject to

complete preemption. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). Hartford argues that the plaintiffs' state law claims in this case fall within the scope of the ERISA civil enforcement provisions, sections 502(a)(2) and 502(a)(3), making them areas of exclusive federal concern.

### a. ERISA §502(a)(2)

ERISA's civil enforcement provision §502(a)(2) states:

> (a)  A civil action may be brought--
>
> \*\*\*
>
> (2)  by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section [409];
>
> \* \* \*

29 U.S.C. § 1132(a)(2)

ERISA § 409, in turn, imposes liability on a fiduciary for a breach of duty toward beneficiaries.

> § 409.  Liability for breach of fiduciary duty
>
> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this [title] shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such

> fiduciary. A fiduciary may also be removed for a violation of section [411] of this title.
>
> (b) No fiduciary shall be liable with respect to a breach of fiduciary duty under this title *if such breach was committed before he became a fiduciary* or after he ceased to be a fiduciary.

29 U.S.C. § 1109(a) & (b) (emphasis added).

Hartford argues that nine of the plaintiffs' ten claims are within the scope of this provision and thus are completely preempted. These nine claims are: (1) violations of the Texas Deceptive Trade Practices Act; (2) civil conspiracy to commit violations of the Texas Deceptive Trade Practices Act; (3) aiding and abetting violations of the Texas Deceptive Trade Practices Act; (4) violations of Tex. Ins. Code Ann. Chapter 541; (5) civil conspiracy to commit violations of Chapter 541; (6) aiding and/or abetting violations of Chapter 541; (7) common law fraud; (8) civil conspiracy to commit fraud; (9) negligent misrepresentation. *See* Petition ¶¶ 27-84. These claims all arise out of five alleged misrepresentations and omissions made by Hartford during the sale to the plaintiffs of the Retirement Product.[2] None of these claims seeks relief for breach of a fiduciary duty, as required by §502(a)(2). Instead,

---

[2] The alleged misrepresentations were as follows: (1) the policy was appropriate and legally permissible for the Cotner DBP; (2) the policy would qualify Cotner DBP as a Section 412(i) plan; (3) the policy provided a permissible death benefit under the Cotner DBP; (4) the policy had an appropriate and legally permissible surrender charge; and (5) the premiums paid on the policies by Jerry B. Cotner, M.D., P.A., qualified as a deduction for federal income tax purposes. Petition ¶ 30.

all of these claims arise from Hartford's conduct which predated creation of the Plan. ERISA provision § 409 clearly states that "no fiduciary shall be liable with respect to a breach of fiduciary duty under this title if such breach was committed before he became a fiduciary." 29 U.S.C. § 1109(b). All of the alleged misrepresentations and omissions by the defendants predate the creation of the Plan and therefore occurred before any of the defendants were fiduciaries with respect to the Plan.[3] Since a fiduciary duty in this case did not exist before the creation of the Plan, ERISA §502(a)(2) cannot apply to these claims. Accordingly, none of these nine state law claims is completely preempted by ERISA.

### b. ERISA § 502(a)(3)

The plaintiffs' final state law complaint is for rescission of the contract. Hartford contends that this claim is within the scope of ERISA § 502(a)(3) and is thus completely preempted. This ERISA provision generally is referred to as the "catch all" provision and provides equitable relief for violations of ERISA not provided for in any of the other civil enforcement provisions. See *Varity Corp v. Howe*, 516 U.S. 489, 512 (1996). Under ERISA,

---

[3] An ERISA fiduciary is defined as "a person . . . with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

>  (a) A civil action may be brought --
>
> ***
>
> (2) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this [title] or terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce provisions of this [title] or the terms of the plan.

29 U.S.C. § 1132(a)(3).

Some district courts have held that rescission may be "appropriate equitable relief" within the meaning of §502(a)(3). See, *e.g.*, *Gorman v. Carpenters' & Millwrights' Health Benefit Trust Fund*, 410 F.3d 1194, 1200 (10th Cir. 2005) (quoting *Griggs v. E..I. Dupont De Nemours & Co.*, 385 F.3d 440, 446 n.3 (4th Cir. 2004)). However, ERISA section § 502(a)(3) can only be used to redress violations of other ERISA provisions or the terms of the Plan. The Plan in question was not yet in existence when the conduct giving rise to the plaintiffs' rescission claim occurred. Section 502(a)(3) cannot apply to a Plan not then in existence. Therefore, the plaintiffs' claim for rescission is not completely preempted.

### B. *Costs and Attorneys' Fees for Improper Removal*

The award of attorneys' fees is not automatic when a cause of action is determined to have been improperly removed to federal cout. *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000). The award of attorneys' fees is made discretionary in removal cases by 28 U.S.C. § 1447(c). In determining whether to

award attorneys' fees, the court only looks to the objective merits of removal at the time of removal and not to the motive of the removing party. *Valdes*, 199 F.3d at 292. "[T]he question we consider in applying § 1447(c) is whether the defendant had objectively reasonable grounds to believe the removal was legally proper." *Id.* at 293.

The court finds that the defendants did not have a colorable argument for removal and awards attorneys' fees and costs to the plaintiffs in the amount of $4,725.00. In this case, Hartford argues that the plaintiffs' claims fall within the scope of § 502(a)(2) and § 502(a)(3) of ERISA. Both of these provisions apply only to an ERISA plan. The plaintiffs' complaints, however, concern only conduct of Hartford which occurred prior to the creation of the ERISA plan at issue here. Further, section § 502(a)(2) is a remedy for breach of fiduciary duty. Hartford states it "potentially could be a fiduciary under the Plan", Response at 6, but never makes a substantive argument that it was a fiduciary, as would be required for the claims to be within the scope of § 502(a)(2). The only other argument propounded by Hartford is that the plaintiffs' claim for rescission is within the scope of § 502(a)(3). This provision applies to remedy situations involving the breach of any ERISA provision not covered by any of the other civil enforcement remedies, or to rectify violations of Plan terms. Hartford does not point out which ERISA provisions or Plan terms have been breached in this case which would trigger the availability of this civil remedy.

The only argument Hartford makes is that the "Plaintiffs' claims relate to the Cotner Plan's assets and affect the relationship of the plan fiduciaries." Response at 5. This argument seems to apply to the second element of the complete preemption test, not to the issue of whether the rescission claim falls within the scope of § 502(a)(3).

Because the defendants have failed to raise a colorable argument in support of removal, the court concludes that Hartford never had any reasonable grounds to believe that removal was proper. Therefore, the plaintiffs' request for costs and attorneys' fees under 28 U.S.C. § 1447(c) and FED. R. CIV. P. 54 is granted.

### III. CONCLUSION

The court finds it lacks subject matter jurisdiction over any of the claims in this action and thus **GRANTS** the plaintiffs' motion to remand. The costs and attorneys fees associated with this improper removal are also **GRANTED** to the plaintiffs in the amount of $4,725.00. The case is hereby **REMANDED** to the **134th Judicial District Court of Dallas County, Texas**. The clerk shall mail a certified copy of this memorandum opinion and order to the district clerk of Dallas County, Texas. 28 U.S.C. § 1447(c).

**SO ORDERED**.

January 4, 2008.

_____
**A. JOE FISH**
**Senior United States District Judge**